OPINION
{¶ 1} Appellant, David P. Slocum, appeals from the October 19, 2007 judgment entry of the Ashtabula County Court of Common Pleas, in which he was sentenced for operating a vehicle under the influence of alcohol ("OVI").
 {¶ 2} On October 27, 2006, appellant was indicted by the Ashtabula County Grand Jury on one count of OVI, a felony of the third degree, in violation of R.C. 4511.19(A)(1) and (C)(1). Appellant pleaded not guilty at his arraignment on November 3, 2006. *Page 2 
 {¶ 3} On November 20, 2006, appellant filed a motion to suppress, in which he challenged the traffic stop, the administration of the field sobriety tests, and his arrest. Appellee, the state of Ohio, filed a response in opposition to appellant's motion to suppress on February 12, 2007.
 {¶ 4} A suppression hearing was held on February 26, 2007.
 {¶ 5} At that hearing, Trooper Scott Balcomb ("Trooper Balcomb"), with the Ohio State Highway Patrol, testified for the state that on March 26, 2006, at about 2:22 a.m., he was on patrol in the area of Barrett Road on Route 534 in Trumbull Township, Ashtabula County, Ohio. He observed appellant's vehicle traveling southbound faster than the posted speed limit of fifty-five miles per hour. Trooper Balcomb enabled his radar, which he calibrated at the beginning of his shift, and stated that it was working properly. He clocked appellant's car traveling at the rate of sixty-five miles per hour, which dropped down to sixty-four, then back up to sixty-five miles per hour.
 {¶ 6} Trooper Balcomb initiated a traffic stop of appellant's vehicle. As he approached, he observed two occupants in the car, in which appellant was identified as the driver. Trooper Balcomb began speaking with appellant. He noticed that appellant's eyes were bloodshot and glossy, and that there was a strong odor of an alcoholic beverage emanating from the vehicle.[1] After asking appellant where he was headed and for his identification, Trooper Balcomb asked him to step out of his car in order to determine whether the odor of alcohol was coming from appellant or the passenger.
 {¶ 7} Trooper Balcomb escorted appellant from his car to the back of the cruiser. Trooper Balcomb testified that appellant had a cough drop in his mouth, but he could still *Page 3 
smell an odor of an alcoholic beverage over the cough drop. Trooper Balcomb asked appellant if he had been drinking and indicated that appellant responded that he had three beers.
 {¶ 8} At that time, Trooper Balcomb asked appellant to submit to standardized field sobriety tests, and appellant complied. Trooper Balcomb administered three tests, including the Horizontal Gaze Nystagmus ("HGN"), the walk and turn, and the one-legged stand. He noted all six clues during the HGN. With respect to the walk and turn, Trooper Balcomb noted five clues. He indicated that appellant moved his feet to keep his balance while listening to instructions, and started before the instructions were completed. He stated that appellant did not touch heel to toe, raised his arms six inches for balance, and turned incorrectly. During the one-legged stand, Trooper Balcomb noted three clues. He testified that appellant swayed while balancing, raised his arms six inches for balance, and put his foot down twice.
 {¶ 9} Appellant was arrested and transported to the station. Trooper Balcomb asked appellant to take a breath test, but he refused.
 {¶ 10} Pursuant to its April 26, 2007 judgment entry, the trial court overruled appellant's motion to suppress.
 {¶ 11} On July 6, 2007, appellant withdrew his former plea of not guilty and entered a plea of no contest. The trial court accepted appellant's no contest plea and deferred sentencing.
 {¶ 12} Pursuant to its October 19, 2007 judgment entry, the trial court sentenced appellant to a two year term of community control and sixty days in jail. In addition, the trial court ordered appellant to pay a fine in the amount of $800, and suspended his driver's *Page 4 
license for three years. Appellant's sentence was stayed pending appeal. It is from that judgment that appellant filed a timely notice of appeal, raising one assignment of error for our review:
 {¶ 13} "The trial court erred when it denied appellant's motion to suppress evidence."
 {¶ 14} In his sole assignment of error, appellant argues that the trial court erred by denying his motion to suppress. He asserts four issues: (1) whether there was reasonable suspicion to support a traffic stop for speeding when the officer used radar from a few hundred feet away, at night, in the rain, and had no records to show the unit was checked for calibration; (2) whether the officer had reasonable suspicion to order him out of his vehicle and conduct an OVI investigation based solely upon alleged observations of an odor of an alcoholic beverage, which admittedly could have come from the passenger, as well as bloodshot and glassy eyes; (3) whether the officer could testify and the trial court could agree that the officer substantially complied with field sobriety testing standards when the officer could not clearly state what the standards were, provided contradictory testimony as to the testing administration, and his testimony proved that critical standards were not allowed at all; and (4) whether the officer had probable cause to arrest him for OVI when there was a minor speed violation, no erratic driving, questionable observations of glassy eyes, an odor of an alcoholic beverage, and field sobriety testing that was administered in a manner that was non-compliant with national testing standards.
 {¶ 15} Initially, we note that this court stated in State v.Jones, 11th Dist. No. 2001-A-0041, 2002-Ohio-6569, at ¶ 16:
 {¶ 16} "[a]t a hearing on a motion to suppress, the trial court assumes the role of the trier of facts and, therefore, is in the best position to resolve questions of fact and *Page 5 
evaluate the credibility of witnesses. State v. Mills (1992),62 Ohio St.3d 357, 366 * * *. When reviewing a motion to suppress, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993),86 Ohio App.3d 592, 594 * * *. Accepting these findings of facts as true, a reviewing court must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the appropriate legal standard. State v. Curry (1994), 95 Ohio App.3d 93, 96
* * *." (Parallel citations omitted.)
 {¶ 17} With respect to appellant's first issue, this court stated inState v. McFadden, 11th Dist. No. 2006-P-0015, 2006-Ohio-5184, at ¶ 16-18:
 {¶ 18} "`As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.' Whren v. United States (1996),517 U.S. 806, 810 * * *.
 {¶ 19} "In State v. Carter, 11th Dist. No. 2003-P-0007,2004-Ohio-1181, at ¶ 33, we stated that:
 {¶ 20} "`(s)topping a vehicle and detaining its occupants is a seizure within the meaning of the Fourth Amendment. Delaware v. Prouse (1979),440 U.S. 648, 653 * * *, citing United States v. Martinez-Fuerte (1976),428 U.S. 543, 556-558 * * *. "Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." Dayton v. Erickson,76 Ohio St.3d 3, 11 * * *.' * * *." (Parallel citations omitted.)
 {¶ 21} In the case at bar, Trooper Balcomb had probable cause to make the *Page 6 
traffic stop due to the speeding violation. See State v. Montes, 11th Dist. No. 2003-L-072, 2004-Ohio-6475, at ¶ 21. Again, Trooper Balcomb observed appellant's vehicle traveling faster than the posted fifty-five mile per hour speed limit. Radar confirmed Trooper Balcomb's visual estimate that appellant was exceeding the speed limit, by nine to ten miles per hour. Thus, he was justified in stopping appellant's car to issue a traffic citation for speeding.
 {¶ 22} Appellant cites to State v. Wilcox (1974), 40 Ohio App.2d 380, and State v. Colby (1984), 14 Ohio App.3d 291, for the proposition that because there was no evidence presented regarding the reliability of the radar unit, its use and results should not be considered. Appellant's reliance on the foregoing cases, however, is misplaced. In the instant matter, appellant was charged with OVI, whereas in Wilcox andColby, the appellants were charged with speeding. The issue inWilcox and Colby concerned the sufficiency of the evidence to sustain a conviction, not the burden of proof at a suppression hearing as in the case sub judice.
 {¶ 23} Here, Trooper Balcomb testified that he was required to estimate a vehicle's speed within three miles per hour in order to pass a training class with the Ohio State Highway Patrol. He talked about the functioning of the radar device and how he calibrated the unit at the beginning of his shift which showed it was in proper working condition. In addition, Trooper Balcomb indicated that the unit's calibration was checked after appellant's traffic stop and that it was working properly. The evidence establishes that Trooper Balcomb, a trained officer, was justified in stopping appellant's vehicle for speeding, which was confirmed by radar.
 {¶ 24} Appellant's first issue is without merit. *Page 7 
 {¶ 25} Regarding his second issue, this court stated in State v.Beaureguard, 11th Dist. No. 2006-A-0080, 2007-Ohio-3369, at ¶ 17:
 {¶ 26} "It is well-established that an officer may not request a motorist to perform field sobriety tests unless that request is independently justified by reasonable suspicion based upon articulable facts that the motorist is intoxicated. State v. Evans (1998),127 Ohio App.3d 56, 62 * * *, citing State v. Yemma (Aug. 9, 1996), 11th Dist. No. 95-P-0156, 1996 Ohio App. LEXIS 3361. `A court will analyze the reasonableness of the request based on the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold.'Village of Kirtland Hills v. Strogin, 11th Dist. No. 2005-L-073,2006-Ohio-1450, at ¶ 13, citing, Village of Waite Hill v. Popovich, 11th Dist. No. 2001-L-227, 2003-Ohio-1587, at ¶ 14." (Parallel citation omitted.)
 {¶ 27} In Evans, supra, this court listed eleven factors commonly used by courts in determining whether an officer was justified in administering field sobriety tests: (1) the time and day of the stop; (2) the location of the stop; (3) indicia of erratic driving before the stop that may indicate a lack of coordination; (4) whether there is a report that the driver may be intoxicated; (5) the condition of the suspect's eyes; (6) impairments to the driver's ability to speak; (7) the odor of alcohol coming from the interior of the car or the driver's person or breath; (8) the intensity of the odor of alcohol; (9) the suspect's demeanor; (10) actions that might indicate a lack of coordination; and (11) admission of alcohol consumption. Id. at 63, fn. 2. "All of these factors, together with the officer's previous experience in dealing with drunken drivers, may be taken into account by a reviewing court in determining whether the officer acted reasonably. No *Page 8 
single factor is determinative." Id.
 {¶ 28} In the instant case, after making a valid traffic stop, Trooper Balcomb was confronted with clear indicators of appellant's intoxication, which necessitated further detention, and included the following Evans factors: the stop occurred at 2:22 a.m. on a weekend; appellant had bloodshot and glossy eyes; his speech was slow and slurred; there was a strong odor of an alcoholic beverage coming from the interior of the vehicle and/or from appellant's person or breath; he had a lack of balance; and appellant admitted to consuming three beers.
 {¶ 29} The foregoing symptoms of intoxication, together with Trooper Balcomb's experience in dealing with intoxicated drivers, gave him a reasonable suspicion that appellant was operating his vehicle while under the influence of alcohol, which justified the administration of the field sobriety tests.
 {¶ 30} Appellant's second issue is without merit.
 {¶ 31} With respect to his third issue, this court recently stated inState v. Maloney, 11th Dist. No. 2007-G-2788, 2008-Ohio-1492, at ¶ 44:
 {¶ 32} "`Under amended R.C. 4511.19, effective April 9, 2003, an arresting officer is no longer required to administer field sobriety tests in strict compliance with testing standards for the test results to be admissible. Rather, only substantial compliance is required.'State v. Barnett, 11th Dist. No. 2006-P-0117, 2007-Ohio-4954, ¶ 18, citing State v. Brown, 166 Ohio App.3d 638, 2006 Ohio 1172 * * *." (Parallel citation omitted.)
 {¶ 33} R.C. 4511.19(D)(4)(b) provides in part:
 {¶ 34} "In any criminal prosecution * * * for a violation of division (A) or (B) of this section, * * * if a law enforcement officer has administered a field sobriety test to the *Page 9 
operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply:
 {¶ 35} "(i) The officer may testify concerning the results of the field sobriety test so administered.
 {¶ 36} "(ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution * * *.
 {¶ 37} "(iii) If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate."
 {¶ 38} The state has the burden to demonstrate that field sobriety tests were conducted in substantial compliance with the NHTSA standards. See Brown, supra, at ¶ 25. Part of this burden includes demonstrating what the NHTSA requirements are, through competent testimony and/or introducing the applicable portions of the NHTSA manual. Brown, supra, at ¶ 19-25, citing State v. Nickelson (July 20, 2001), 6th Dist. No. H-00-036, 2001 Ohio App. LEXIS 3261, at 10, and State v. Ryan, 5th Dist. No. 02-CA-00095, 2003-Ohio-2803, at ¶ 20-21. See, also, State v.Duncan, 11th Dist. No. 2004-L-065, 2005-Ohio-7061, at ¶ 18-21.
 {¶ 39} In the present case, the state introduced testimony of Trooper Balcomb as *Page 10 
to which test was conducted and how it was administered. However, a review of the transcript from the suppression hearing reveals that the state failed to produce any evidence to prove that the tests were conducted in a standardized manner as provided by the NHTSA, and did not admit the manual. As such, the results of the tests conducted by Trooper Balcomb should have been suppressed. Brown, supra, at ¶ 25; State v.Mook, 11th Dist. No. 2004-T-0148, 2006-Ohio-4947, at ¶ 15;Duncan, supra, at ¶ 21.
 {¶ 40} Specifically, in its brief, the state indicates that "appellant failed to object to the State's failure to introduce the NHTSA manual." However, in reviewing the motion to suppress filed by appellant at the trial court level, part IV specifically alleges the field sobriety tests were not conducted in substantial compliance with the NHTSA standards. This placed the burden directly on the state to establish that they were. State v. Djisheff, 11th Dist. No. 2005-T-0001, 2006-Ohio-6201, at ¶ 21. (Citations omitted.)
 {¶ 41} Further, the state alleges that it was established at the hearing that Trooper Balcomb testified to: 1) his administration of the field sobriety tests, 2) completing training in the administration of the tests, 3) the procedures he employed for each test, and 4) that the tests must be performed in substantial compliance with testing standards. However, there was no testimony as to what the standards were for performance of the one-legged stand test and the walk and turn test. Of particular concern is the following testimony of Trooper Balcomb regarding the administration of the HGN test: *Page 11 
 {¶ 42} "The way I was trained, which was according to the NHTSA manual, I don't recall at this time exactly how, that was a year ago, exactly how I did it, but the way I do it now, is the same way that I read in this manual."
 {¶ 43} Trooper Balcomb's candid admission that he did not remember how he conducted the HGN test precludes a finding that the test was conducted in substantial compliance with the NHTSA standards. With regard to the HGN test, appellant's trial counsel introduced a portion of the NHTSA manual that appears to relate to the administration of the HGN test. It is unclear from the portion of the manual admitted and the testimony whether or not there was substantial compliance with the NHTSA procedures for the HGN test. For example, it seems clear that the test was performed while appellant was seated in the back seat of the patrol car. In a previous case, this court had evidence in the record that the test should be performed outside the car. Djisheff, supra, at ¶ 23-24. This court held that the failure to elicit testimony that the officer was trained to perform the test while the defendant was in the car was one factor that weighed toward a finding that there was no substantial compliance. Id. at ¶ 24.
 {¶ 44} In this matter, there simply is no combination of admissible evidence and live testimony that establishes the entire standards for performance of the HGN test. Further, the state does not meet its burden by a police officer testifying that, as a regular practice, he conducts the field sobriety tests according to the NHTSA manual if there is no evidence in the record as to what those standards are. The actual standards must get in the record to allow the court to assess "substantial compliance" by comparing the standards to the manner in which the specific field sobriety tests were actually done.
 {¶ 45} Appellant's third issue is with merit. *Page 12 
 {¶ 46} Based on our analysis in appellant's third issue, because we believe that the results of the field sobriety tests should have been suppressed, we must decide whether Trooper Balcomb had probable cause to arrest appellant absent the tests. See State v. Homan (2000),89 Ohio St.3d 421, 427.
 {¶ 47} With regard to his fourth issue, this court recently stated inState v. Bauerle, 11th Dist. No. 2007-L-078, 2008-Ohio-1493, at ¶ 23:
 {¶ 48} "* * * `(i)n determining whether the police had probable cause to arrest an individual for (driving under the influence), we consider whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence. Beck v. Ohio (1964), 379 U.S. 89, 91 (* * *);State v. Timson (1974), 38 Ohio St.2d 122, 127 (* * *). In making this determination, we will examine the "totality" of facts and circumstances surrounding the arrest. See State v. Miller (1997), 117 Ohio App.3d 750,761 (* * *); State v. Brandenburg (1987), 41 Ohio App.3d 109, 111 (* * *).'State v. Homan (2000), 89 Ohio St.3d 421, 427 * * *. (Parallel citations omitted.)"
 {¶ 49} Here, even if the results of the field sobriety tests were suppressed by the trial court, the state met its burden of probable cause based upon the other objective facts observed and testified to by Trooper Balcomb. See, e.g., State v. Hynde, 11th Dist. No. 2004-P-0030,2005-Ohio-1416, at ¶ 11.
 {¶ 50} In the case sub judice, again, the stop occurred at 2:22 a.m. on a weekend. Upon speaking with appellant, Trooper Balcomb noticed that he had bloodshot and glossy eyes, and his speech was slow and slurred. There was a strong *Page 13 
odor of an alcoholic beverage coming from the interior of the vehicle and/or from appellant's person or breath. "`An officer's detection of an odor of an alcoholic beverage is a relevant factor to determine if the officer has probable cause to arrest a suspect for (driving under the influence).'" Bauerle, supra, at ¶ 25, quoting Djisheff, supra, at ¶ 37. Trooper Balcomb testified that appellant had a lack of balance. Also, the record shows that appellant admitted to consuming three beers. "An admission by a driver that he has consumed alcoholic beverages is a factor to be considered in a probable cause determination for a [driving under the influence] arrest." Djisheff, supra, at ¶ 36, citing State v.Droste (1998), 83 Ohio St.3d 36, 40; see, also, Hynde, supra, at ¶ 11.
 {¶ 51} Here, Trooper Balcomb had probable cause to arrest appellant for OVI. However, the trial court's failure to suppress the results of the field sobriety tests does not amount to "harmless error."
 {¶ 52} In appellant's motion to suppress, he sought to suppress his "arrest and all evidence obtained from the warrantless seizure of the Defendant." In part, appellant argued that the results of the field sobriety tests should have been suppressed. This court has agreed that the results of those tests should be suppressed. Thus, they are not admissible at appellant's trial. See State v. Schmitt,101 Ohio St.3d 79, 2004-Ohio-37, at ¶ 8. However, the Schmitt Court went on to explain that in spite of the decision to suppress and exclude the results of field sobriety tests not performed in accordance with the accepted standards, this would not prevent an officer from testifying at trial "regarding observations made" while the defendant performed nonscientific tests. Id. at ¶ 15. *Page 14 
 {¶ 53} Appellant's fourth issue with respect to probable cause is without merit. However, this matter should be returned to the trial court's docket at the point where the trial court erroneously denied appellant's motion to suppress. Thereafter, appellant must be left in the position of assessing his decision to plead or go to trial based on the ruling that is made on what type of evidence will be admitted against him. This court cannot make that decision for him.
 {¶ 54} For the foregoing reasons, appellant's sole assignment of error is well-taken. The judgment of the Ashtabula County Court of Common Pleas is reversed and the matter is remanded for further proceedings consistent with this opinion.
 {¶ 55} It is ordered that appellee is assessed costs herein taxed. The court finds there were reasonable grounds for this appeal.
CYNTHIA WESTCOTT RICE, J., TIMOTHY P. CANNON, J., concur.
[1] On cross-examination, Trooper Balcomb testified that appellant's speech was slurred. *Page 1